ANNIE VOEGELI, by Next Friend, etc., Respondent, v.
THE PICKEL MARBLE & GRANITE COMPANY,
Appellant.

St. Louis Court of Appeals, May 10, 1892.

1. **Liability of Master for Tortious Act of Servant.** A master is responsible for the tortious act of his servant, if such act was within the scope of the servant's employment, or is shown either directly or inferentially to have been authorized by the master.

2. ————: IMPLIED AUTHORITY FROM MASTER. The fact that the act of the servant is unlawful will not prevent the implication of an authority for the commission of it from the employment itself. The test is not the lawfulness or the unlawfulness of the means adopted by the servant to accomplish his master's business, but it is whether such means are so far incident to the employment as to come within its scope. And *held*, in the case at bar, that authority to servants to deposit rubbish, produced by the master's business, in the street in front of the master's premises carried with it the power or duty of removing the same, and that in burning it in the street the servants acted within the scope of their authority.

3. ————: SUFFICIENCY OF EVIDENCE OF AUTHORITY FROM MASTER. *Held*, also, that proof, that the servants were accustomed to burn the rubbish thus deposited in the street by them, was some evidence of express authority from the master to them to thus dispose of the rubbish.

4. ————: INSTRUCTIONS. An instruction is erroneous, if it authorizes a recovery against the master for the tortious act of his servants without requiring any finding that the servants acted within the scope of their employment or by authority from the master, where this is controverted.

5. **Instructions:** OMISSION OF ESSENTIAL CONDITION TO RIGHT OF ACTION: EFFECT OF OTHER INSTRUCTIONS. If an instruction given for the plaintiff, which undertakes to state the conditions upon which his right of action is predicted, omits an essential element to such right of action, the existence of which is in dispute, the error is not cured by another instruction given for the defendant, which mentions that element as one of the conditions precedent to the plaintiff's right of recovery.

6. **Pleading:** CONTRIBUTORY NEGLIGENCE. Contributory negligence is an affirmative defense, and, if relied on, must be pleaded. If not pleaded, the question of its existence should not be submitted to the jury as an issue of fact; in such case it will only debar a recovery by the plaintiff, when it is conclusively established by the evidence of the plaintiff himself.

7. ———: MASTER AND SERVANT. In stating a cause of action against a master for the tortious act of his servant, it is not necessary to expressly aver that the servant acted within the scope of his employment or by authority from his master; an allegation, that the defendant by its servants or agents was guilty of the negligent act complained of, implies that the act was done about the master's business and within the scope of the servant's employment.

*Appeal from the St. Louis County Circuit Court.* HON. W. W. EDWARDS, Judge.

REVERSED AND REMANDED.

*Rudolph Schulenburg* and *G. A. Wurdeman,* for appellant.

No brief filed for respondent.

BIGGS, J.—This is an action for personal injuries, which the plaintiff alleged she received through the negligent conduct of the defendant's servants. The cause of action stated was, in substance, that the defendant's servants threw wood and other combustible material into a public street in the city of St. Louis, from its premises, and set fire to the same, thereby creating a nuisance which was dangerous and attractive to children; that the plaintiff, who at the time was five years old, was attracted by the fire and was thereby induced to play therewith, and was burned and injured thereby. The defendant's answer was a general denial. There was a change of venue from the circuit court of this city, where the suit was instituted, to the circuit court of the county of St. Louis, where on a trial before a jury there was a verdict and judgment for the plain-

tiff for the sum of $600. The defendant has brought the case here by appeal.

The defendant complains of the action of the court in overruling its demurrer to the plaintiff's evidence; that the plaintiff's instructions are wrong; that the court erred in refusing the defendant's instructions on the question of contributory negligence; and that the court committed error in refusing to arrest the judgment. We will notice the errors assigned in the order stated.

The argument of the defendant's counsel in support of the first assignment is predicated on the rule, that a master is not liable for the tortious acts of his servants, unless the act complained of from its nature is within the scope of the servant's employment, or is shown either directly or inferentially to have been authorized by the master. The contention is that the plaintiff's evidence had no tendency to prove either state of facts. There is no difficulty about stating the rule of law which is to govern in determining the master's liability in such cases, but the difficulty which courts and juries encounter is in its application. Mr. Wood, in his work on master and servant, treats of the question in this way: "No decisive test can be given, but in all cases the act must have been done while engaged in the prosecution of some business for the master, and that business must have been such as the servant had authority from the master to do; that is, he must have been authorized, either expressly or impliedly, to do the act in some manner, which he has improperly or wrongfully performed, and the fact that he was only authorized to do the act in a *certain way* does not save the master from liability. If he was authorized to do the act at all, the master is liable for the consequences of his doing it in a *different manner*, if the mode adopted by him is so far *incident* to the

employment that it comes within its scope, for having given the servant any authority in the premises, he alone must suffer for its abuse. He has set the wrong in motion, and must abide the consequences as against innocent parties." Wood on Master & Servant [2 Ed.] sec. 309. We think that the foregoing quotation is as lucid a statement of the modern doctrine as it is possible to make.

Now, let us examine the plaintiff's evidence for the purpose of applying the law. This evidence tended to show that the defendant was engaged in the marble business; that its premises fronted on Labaume street, which is a public street; that its servants were in the habit of throwing into this street marble chips, pieces of lumber, shavings and other combustible material, and that this rubbish had been on several occasions prior to the accident burned up in the street. It is conceded that, a short time before the plaintiff was burned, shavings and other materials, which had been deposited on the street by the defendant's servants, were set on fire, but the evidence failed to show who started the fire. However, one or two of the plaintiff's witnesses testified that, after the first lot of rubbish had partially burned, but prior to the accident, one of the defendant's servants brought from the defendant's premises additional material and threw it on the fire. The plaintiff's evidence also tended to show that she and other small children were delving in the embers for nails, and that, while so doing, her clothing caught on fire, thereby causing the injuries complained of.

It is not controverted that the burning of the rubbish in the public street was an attractive danger which in its nature was likely to attract children; but the contention is that the plaintiff's evidence failed to connect the defendant with the wrong, and that, therefore, its demurrer to the evidence ought to have been

sustained. We cannot agree to the proposition, that the plaintiff's evidence furnished no substantial proof that the rubbish was set on fire by the defendant's servants. There was evidence that, prior to this, the rubbish had been burned by some one, and there was direct proof that, on the morning of the accident, one of the defendant's servants renewed the fire by placing on it additional materials, which had been carried from the defendant's premises. From these facts the inference was a fair one, that the defendant's servants had been in the habit of depositing the materials in the street and burning them up, and that they started the fire on the morning the plaintiff received her injuries. We are also of the opinion that this evidence shows that the act of burning the rubbish was within the scope of their employment. The depositing of the rubbish in the street must be regarded as a temporary disposition of it, for otherwise it would have amounted to an unlawful obstruction of the street. Its prompt removal in some way would necessarily be one of the *implied* duties resting on the defendant's servants in carrying on the business. But it is said that the burning of the rubbish was an unlawful act, and that, therefore, authority to do so could not be implied by reason of the employment merely; that express authority from the master must be shown in order to make him liable therefor. The doctrine of the early English cases would seem to lead to this conclusion, but the modern decisions, both in England and America, agree with Mr. Wood in his statement of the law. The test is not the lawfulness or the unlawfulness of the means adopted by the servant to accomplish his master's business, but it is whether such means are so far incident to the employment as to come within its scope. The case of *Jones v. Packet Co.*, 43 Mo. App. 398, illustrates this principle. There the plaintiff was

in the employ of the defendant as a deckhand. He complained that the mate of the boat, whom the defendant had placed as a boss over the crew, had assaulted and beat him for the purpose of compelling him to work. We held that the right of the mate to use force in the execution of his master's orders could not be implied from his employment merely; that the employment only implied the right to use *words* of command, and not the power *to assault* the plaintiff, if the mate deemed it necessary to the doing of the master's business. In the opinion on the motion for a rehearing Judge ROMBAUER very clearly drew the distinction between the principles governing that case and those applied in the case of *Levi v. Brooks*, 121 Mass. 501. There the defendant's servant was intrusted with the seizure of goods, and in doing so he used force. The plaintiff complained of this, and the master was held on the ground that the authority to seize the goods *impliedly authorized the use of force in case of resistance.* So, in the case before us, we think that the authority conferred by the defendant on its servants to place the rubbish in the street carried with it the power or duty of removal, and, if the servants adopted unlawful means for the accomplishment of this duty, or even in so doing disregarded the defendant's express commands as to the mode, the defendant must answer for the resulting damages. But, if we are wrong as to the implied authority of removal, the evidence, which tends to prove that the defendant's servants had been accustomed to burn the trash, also furnished some evidence of express authority to so dispose of it. *Reilly v. Railroad*, 94 Mo. 600. Hence, we conclude that under any view of the law the questions of fact presented by this assignment were properly submitted to the jury. This assignment will be overruled.

The court, upon the plaintiff's request, gave the following instruction, which was the only instruction given for plaintiff stating the conditions of defendant's liability: "If the jury find from the evidence in this case that Labaume street at the place mentioned was on the tenth day of April, 1890, an open public street of the city of St. Louis; and if the jury further find from the evidence that Martin Voegeli was appointed the next friend of the plaintiff before this suit was brought; and if the jury further find from the evidence that on the tenth day of April, 1890, *the defendant's servants placed in said street certain rubbish and combustible material and set fire to same,* and that said rubbish so set on fire in said street was an attraction to children to play therewith; and if the jury further find from the evidence that said material so set on fire in said street was dangerous to children on said street; and if the jury further find from the evidence that the plaintiff Annie was at said time a child between five and six years of age, and that she was attracted to said fire to play therewith, and that, while doing so, she had her clothes take fire and burn and injure her, *then the plaintiff is entitled to recover.*" (The italics are our own.)

This instruction is challenged by the defendant as laying down an incorrect proposition of law, and touching that fact there can be no controversy whatever, because the defendant's liability does not depend upon the fact whether *servants in its employ* placed the rubbish in the street and set fire to it, but whether its servants did so while engaged in its business and while acting within the scope of their employment. *Snyder v. Railroad,* 60 Mo. 413; *Farber v. Railroad,* 32 Mo. App. 378. Under the instruction as drawn, the defendant would be liable, if any of its servants had placed the rubbish in the street, and if any of its servants

had set fire to it, which, as above seen, is not the law.

The error in the instruction being thus unquestioned, the only remaining question is whether such error was rendered unprejudicial by the fact, that the court upon defendant's request gave an instruction, which told the jury that the defendant was not responsible, unless the jury found that said employes or servants in kindling said fire acted within the scope of their [employment, or that the kindling of said fire was authorized or ordered by the said defendant corporation.

The question presented is, *first*, was there any inconsistency between these two instructions, and, if not, *then* was the apparent vice in the plaintiff's instruction helped out by the defendant's instruction. It would seem that there is an apparent inconsistency between these two instructions, because the plaintiff's instruction makes the defendant liable if any of its servants did the act, whereas the defendant's instruction tells them that the defendant is not responsible, unless the servants doing the act did so by order of their employer, or within the scope of their business.

The early rule in this state was that instructions must be so framed, as not to exclude from the consideration of the jury points which are fairly raised by the evidence on either side. *Clark v. Hammerle*, 27 Mo. 70; *Sawyer v. Railroad*, 37 Mo. 263; *Fitzgerald v. Hayward*, 50 Mo. 516. As was properly said by Judge BLISS in *Goetz v. Railroad*, 50 Mo. 474, an instruction in itself erroneous, given on part of the plaintiff, cannot be supplied by an instruction given on behalf of the defendant. The fact, that it is contradicted by one on defendant's behalf, tends rather to confuse than to enlighten the jury. An ambiguous or general term in an instruction may be explained by another, and a

partial view may sometimes be supplied, but the whole should be consistent and harmonious. It was properly remarked by Judge LEWIS in *State v. Nauert*, 2 Mo. App. 295, that a contradiction between two instructions, so far as correcting the evils in either, multiplies them in both.

An apparent departure from this salutary rule is claimed to be found in a series of cases beginning with *Karle v. Railroad*, 55 Mo. 476. It was there stated that all instructions in a case must be considered together as if forming one series. But, in applying the rule in a particular complaint made in that case, Judge NAPTON stated that the instruction complained of *manifestly implies* what the defendant's instructions more fully *assert*, which simply reiterates the view of Judge BLISS, that a general term in an instruction may be explained by another. That case, however, as well as the subsequent cases of *Muehlhausen v. Railroad*, 91 Mo. 332, and *Owens v. Railroad*, 95 Mo. 181 (in which two of the judges dissented), asserts the qualification, that, before one instruction can thus be supplied by another, they must be consistent and not misleading in their tendency. In *Daugherty v. Railroad*, 97 Mo. 647, 663, the court seemed inclined to adhere more to the rule established in the earlier cases. Several instructions given for the plaintiff were complained of. In its first opinion, the court, speaking through Judge RAY with reference to one of these instructions, says: "If, however, by reason of its construction it may be somewhat involved, or obscure, the other instructions in the cause unquestionably remedy that defect." The learned judge adhered to that view on rehearing, but Judges SHERWOOD, BLACK and BRACE would not adhere to it, and the judgment was reversed for error in these instructions. Finally, in the case of *Schroeder v. Michel*, 98 Mo. 43, 48, the entire court endeavored,

in a *per curiam* opinion to which all judges could agree, to formulate a rule which was done in the following words:

"It is undoubtedly better and more logical practice for every instruction, assuming to state the facts necessary to a verdict for plaintiff, to refer to such *affirmative defenses* as the case may present. But whether or not the omission to do so constitutes reversible error will greatly depend on the language of the different instructions in each particular case. If the qualification of the instruction complained of appears elsewhere in a form fairly bringing it to the attention of the jury as a modification of the other, the judgment will not, on that account, be reversed."

We have italicized the words, affirmative defenses, because almost every case wherein the question arose was one where an instruction given for the plaintiff failed to submit to the jury an affirmative defense advanced by the defendant, such as contributory negligence or limitation. We assume no case can be found, where the plaintiff's instruction on his own case states erroneous precedent conditions of recovery, and yet where it was held that the defendant's negative instruction was sufficient to supply the affirmative instruction of the plaintiff.

In cases where the defenses are affirmative the petition need not anticipate and avoid the effect of such defenses, and, hence, there is some plausibility in the argument, that the plaintiff's instructions are not necessarily erroneous because they fail to call attention to the evidence in support of purely affirmative defenses, provided always the defendant's instructions supply the omission; but with what show of reason can that argument be made, where the plaintiff's instructions omit essential conditions of his right of recovery, regardless of any affirmative defenses interposed. In the case at

bar it was not for the defendant to show that the persons setting fire to the rubbish were not its servants acting within the scope of their employment, but it was for the plaintiff to show both these facts as a condition precedent to their recovery. An instruction, therefore, which tells the jury in unmistakable terms that the defendant was responsible if any of its servants did the act, was clearly misleading.

The defendant also complains of the action of the court in refusing to submit to the jury the question of contributory negligence. It is well-settled law in this state that contributory negligence is an affirmative defense, and, if relied on, must be set out in the answer. The defendant undertakes to avoid this by invoking the rule that, when the plaintiff's own evidence makes out a case of contributory negligence, there can be no recovery. This is perfectly clear, but the plaintiff's evidence must be of such a character as to enable the court to say, as matter of law, that the plaintiff has been guilty of such contributory negligence as would defeat the action. If the question is a debatable one, then it is error to submit it, where the defendant has failed to make the defense in the answer. In the present case it is sufficient to say that, under any circumstances, it would be error for a court to decide, as a matter of law, that a child of five years has been guilty of contributory negligence. If it could be made a question at all, it would be one of fact for the jury, and, as the defendant failed to make the defense by answer, it was not entitled to have the question submitted.

Lastly, the defendant insists that the motion in arrest should have been sustained, because the petition failed to state that, when the defendant's servants threw the rubbish in the streets and lit the same, they were in the employ of the defendant and engaged upon the business thereof, and failed to state the circum-

stances bringing such act within the particular course
of their employment.  The supreme court in *Travers v.
Railroad*, 63 Mo. 421, decided that it was not necessary
to aver such facts.  In the case of *Cousins v. Railroad*,
66 Mo. 572, the petition alleged that at the time of the
accident the engine was in charge of the defendant's
servants.  The answer was a general denial.  The real
defense was that the engine at the time the injuries
were inflicted was not in charge of the defendant's
servants, or that they were engaged in the defendant's
business.  It was held that the defense was admissible
under the general issue.  These cases proceed upon the
theory, and properly so we think, that an allegation,
that the defendant by its agents or servants was guilty
of a negligent act, implies that the act was done about
the master's business, and within the scope of the
servant's employment.  We will overrule likewise this
assignment.

For the error in the plaintiff's instruction the judg-
ment of the circuit court will be reversed and the cause
remanded.  All the judges concur.